UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:23-cr-00013-TWP-VTW |
| ) | |
| JUAN PEREZ-GONZALEZ ) | -02 |
| DALWY DE ARMAS-RODRIGUEZ ) | -04 |
| ) | |
| Defendant. ) | |

**ENTRY REGARDING RULE 404(b) NOTICE**

This matter is before the Court on Plaintiff, the Government's Notice of Intent to Introduce Evidence at Trial Pursuant to Rule 404(B), Federal Rules of Evidence, and Rule 16, Federal Rules of Criminal Procedure ([Filing No. 271](Filing No. 271)). The Government seeks to offer evidence of Defendant Juan Perez-Gonzalez's ("Perez") conduct related to a 2009 and 2014 conviction for Cargo Theft. For the reasons explained below, the 404(b) Notice is **approved in part**.

### I. BACKGROUND

This matter is set for a seven-day jury trial beginning Monday, July 14, 2025. The original indictment charges Defendants Carlos Enrique Freire-Pifferrer ("Freire"), Juan Perez-Gonzalez ("Perez"), Jose Antonio Gomez-Pifferrer ("Gomez"), Dalwy De Armas-Rodriguez ("De Armas"), Luis Velazquez ("Velazquez"), Richard Alameda ("Alameda"), and others known and unknown in connection with the thefts of multiple cargo shipments (namely tractor-trailers) from interstate commerce. Only two defendants remain set for trial: Perez and De Armas. Both are charged in the Superseding Indictment with Count 1: Conspiracy to commit an offense against the United States in violation of 18 U.S.C. § 371. Perez is also charged with Count 6: Possession of Goods Stolen From Interstate Commerce in violation of 18 U.S.C. §§ 659, 2; and Count 7: Interstate

Transportation of Stolen Property in violation of 18 U.S.C. §§ 2314, 2 (Filing No. 128). The Superseding Indictment alleges that Manner and Means of the Conspiracy were as follows:

> (a) FREIRE, PEREZ, GOMEZ, DE ARMAS, VELAZQUEZ, and their co-conspirators traveled from various locations throughout the United States to Indiana, Kentucky, Ohio, Tennessee, and other U.S. States to steal products that were being shipped in interstate commerce.
>
> (b) FREIRE, PEREZ, GOMEZ, DE ARMAS, VELAZQUEZ, and their co-conspirators surveilled distribution facilities used by various national companies to distribute their products in interstate commerce.
>
> (c) FREIRE, PEREZ, GOMEZ, DE ARMAS, VELAZQUEZ, and their co-conspirators located and then followed semi-tractor trailers leaving the distribution facilities transporting products in interstate commerce.
>
> (d) When the driver of the cargo load would stop to rest, refuel, or park his/her truck, FREIRE, PEREZ, GOMEZ, DE ARMAS, VELAZQUEZ, and their co-conspirators would steal the entire semi-tractor and trailer.
>
> (e) In many cases, FREIRE, PEREZ, GOMEZ, DE ARMAS, VELAZQUEZ, and their co-conspirators would abandon the stolen tractor a short distance away after hooking the stolen trailer up to a semi-tractor owned/operated by one of the co-conspirators.
>
> (f) In many cases, FREIRE, PEREZ, GOMEZ, DE ARMAS, VELAZQUEZ, and their co-conspirators would paint over any logos and/or identifying numbers on the stolen trailer, and use different license plates in an effort to conceal the identity of the trailer and evade law enforcement detection.
>
> (g) In many cases, FREIRE, PEREZ, GOMEZ, DE ARMAS VELAZQUEZ, and their co-conspirators would then transport the stolen cargo to Dade County, Florida, where it would be sold to ALAMEDA, or another buyer, for a fraction of the stolen load's retail value.

*Id*. at 2-3. Perez's co-defendant, Carlos Enrique Freire-Pifferrer ("Freire") is also charged with Counts 1, 6 and 7 and other additional counts.

In 2009, Perez was federally charged, pled guilty, and was convicted of interstate transportation of stolen property and conspiracy in the Eastern District of Kentucky under Cause No. 09-144-(1)-KKC. (Filing No. 271-3). In the 2009 case, Perez and his co-conspirators stole two

semi-trailers loaded with liquor, valued at approximately $500,000, from a distribution facility in Jeffersonville, Indiana. FBI agents examined the trailer and observed that the distribution facilities logos on the rear and driver's side of the stolen trailer had recently and "haphazardly" been painted over with white paint. *Id*. In addition, an expired Tennessee license plate was attached with Velcro over the original State of Maine license plate on the trailer. *Id*.

In 2014, while on supervised release from his conviction and sentence in the 2009 case, Perez was again federally arrested, charged, and convicted of interstate transportation of stolen property and conspiracy in the Southern District of Indiana under case number 4:14-cr-00031-TWP-VTW-02.  Freire, Perez's co-defendant in this case was also charged and convicted in case number 4:14-cr-00031- TWP-VTW-02.

The stipulated factual basis for the 2014 offense states that Perez and his conspirators— including Freire— "surveilled distribution facilities; targeted semi-tractor trailers that were leaving the distribution facilities with high value goods; followed the semi-tractor trailers until the driver stopped to rest, refuel, or park; stole said semi-tractor trailers when the drivers stopped; abandoned the stolen semi-tractors a short distance away after hooking the stolen trailers up to semi-tractors owned or operated by one of the conspirators; painted over any logos or identifying numbers on the stolen trailers and used different license plates to conceal the identity of the stolen trailers; and then transported the stolen trailers to Dade County, Florida, for sale." (*See* Filing No. 271-5).

Concerning the instant case, the Government proffers the following:

On the morning of August 31, 2022, deputies from the Jasper County Sheriff's Office were dispatched to a Love's Truck Stop in Demotte, Indiana, to investigate the reported theft of a tractor-trailer hauling a high-value load of Microsoft products. Deputies determined that the load originated in Louisville, KY, and was destined for Minnesota when it was stolen in Demotte when the driver of the truck stopped to rest at a truck stop. Later that morning, Indiana State Police identified the trailer stolen from Demotte traveling southbound on Interstate 65 and conducted a traffic stop. Troopers identified defendant De Armas as the driver of the truck

3

> hauling the stolen trailer. Troopers determined that the license plates on the stolen trailer had been switched and new numbers had been painted on the trailer in an effort to avoid law enforcement detection.
> …
> Perez and his coconspirators traveled to Kentucky, Indiana, Ohio, and Tennessee for the purpose of stealing shipments of cargo traveling in interstate commerce. Members of the conspiracy would then transport the stolen cargo to locations in Florida where it would be sold for financial gain.

([Filing No. 271 at 5](#)).

The Government intends to call cooperating witnesses who will testify to Perez's conduct in the prior cargo thefts, which were prosecuted in the 2009 and 2014 federal cases. The Government argues the conduct of Perez and his co-conspirators mirror the conduct of Perez and his coconspirators in the instant case, and "is admissible to prove, directly and circumstantially, the elements of the charged offense" and additionally "is relevant to show motive, intent, opportunity, plan, knowledge, identity, modus operandi, and absence of mistake or accident." ([Filing No. 271 at 3](#)).

The Government also seeks to offer evidence that De Armas was involved in the theft of two separate shipments of tires that are not included among the overt acts outlined in the Superseding Indictment. ([Filing No. 271 at 9](#)). The Government argues those thefts were nevertheless a part of the overall criminal conspiracy to steal cargo shipments. *Id*.

Perez argues the proffered evidence is pure propensity evidence and must be excluded; and further objects to such evidence under Federal Rule of Evidence 403. ([Filing No. 282](#)).

## II.     LEGAL STANDARD

Federal Rule of Evidence 404(b)(1) states that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." Fed. R. Evid. 404(b)(1). Rule 404(b)(2) allows such evidence when it is used for another purpose, such as proving notice, opportunity, intent, preparation, plan, knowledge, identity,

absence of mistake, or lack of accident. Fed. R. Evid. 404(b)(2). The Seventh Circuit has provided a four-part test to be used in 404(b) determinations. Courts are to consider whether: (1) the evidence is directed toward establishing a matter in issue other than the defendant's propensity to commit the crime charged; (2) the evidence shows that the other act is similar enough and close enough in time to be relevant to the matter in issue; (3) the evidence is sufficient to support a jury finding that the defendant committed the similar act; and (4) the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice. *See United States v. Howard*, 692 F.3d 697, 703 (7th Cir. 2012). The Seventh Circuit has directed that district courts must also assess whether the probative value of the "other act" evidence is substantially outweighed by the risk of unfair prejudice, and courts may exclude the evidence under Rule 403 if the risk of unfair prejudice is too great. *United States v. Gomez*, 763 F.3d 845, 856-60 (7th Cir. 2014).

### III.   DISCUSSION

During trial, the Government intends to call cooperating witnesses with knowledge of Perez's and Freire's involvement in both the prior 2014 conviction and the instant offense. The Government expects those witnesses will testify "concerning how Freire and Perez became acquainted, how they worked together to steal cargo shipments before being arrested and imprisoned in the prior case." (Filing No. 271 at 7). The Government proffers that those witnesses will also testify "concerning the circumstances of how Freire and Perez, once released from prison, teamed up again in late 2022 and began stealing cargo shipments" and "that the *Modus Operandi* Freire and Perez used to steal cargo in the prior case was the same approach they used in the instant case." *Id*. Namely, that Freire, Perez and others would conduct surveillance at distribution facilities in Tennessee, Kentucky, and Indiana, follow tractor trailers leaving those facilities until they stopped, steal the tractor trailer, abandon the tractor a short distance away, paint over logos on the

stolen trailer, put stolen license plates on the stolen trailer, and finally, a member of the conspiracy would transport the stolen trailer to Florida where the stolen cargo would be sold. *Id*.

In addition, the Government seeks to illicit testimony that at all times relevant to the indictment, both Freire and Perez were on federal supervised release following their release from prison in the 2014 case. The testimony is expected to show that Perez was being supervised by the U.S. Probation Office in the Middle District of Florida but nevertheless repeatedly traveled from Florida to Kentucky for the purpose of stealing cargo shipments with Freire. *Id*. at 8. The Government intends to call the U.S. Probation Officer who supervised Perez, and the Officer is expected to testify about the phone number Perez provided to the U.S. Probation Office upon his release in late 2022, the restrictions placed on Perez while on supervised release and the potential punishments for Perez if he were caught violating the terms of his supervised release. *Id*.

An FBI Special Agent is also expected to separately testify that the telephone number Perez provided is the same as the telephone number the FBI used to obtain a federal warrant to track Perez's cell phone and obtain historical call records allowing the FBI to map Perez's whereabouts during the cargo thefts that Perez is charged with in this case. *Id*.

The Government also intends to call retired FBI Special Agent Paul Meyer who assisted in the investigation of the 2009 liquor thefts that resulted in Perez's conviction and served as the case agent for the significant cargo theft investigation that led to Freire and Perez's federal convictions in 2014. *Id*. at 9. Special Agent Meyer is expected to testify about his extensive investigation in the prior cases and the *modus operandi* utilized by Freire, Perez, and their co-conspirators in those cases, which is identical to that employed by Freire, Perez, and the co-conspirators in the instant case. *Id*.

The Government argues that the above evidence should be admitted as direct evidence and in the alternative should be admitted under Fed. R. Evid. 404(b). The Court will address each argument in turn.

**A.     Direct Evidence**

The Government argues that its proffered evidence is admissible as relevant evidence, and not "other acts" evidence under Rule 404(b). *Id*. at 10 (citing *United States v. Vargas*, 689 F.3d 867, 874 (7th Cir. 2012)). In response, Perez argues that evidence of the two prior convictions is too remote in time to be relevant as direct evidence (Filing No. 282 at 2). Perez also contends that to the extent there is an overlap regarding Perez having been on supervised release for his 2014 conviction at the time the evidence in this case was gathered against him, such evidence can be introduced without providing details of his prior conviction. *Id*. The Court agrees that Perez's 2009 conviction does not constitute direct evidence but finds that Perez's 2014 conviction does.

As the Government points out, direct evidence of the crimes charged may be admissible. *Vargas*, 689 F.3d at 874. "[I]f the evidence relates to acts 'concerning the chronological unfolding of events that led to an indictment, or other circumstances surrounding the crime,' it is not evidence of 'other' acts, as Rule 404(b) uses the term." *United States v. Holt*, 460 F.3d 934, 937 (7th Cir. 2006) (quoting *United States v. Ramirez*, 45 F.3d 1096, 1102 (7th Cir. 1995)). "Instead, it is part of the story of the very offense for which the defendant is on trial, even if it only does something like completing that story or explaining the circumstances." *Id*. at 937-38. Such "evidence about these closely linked acts may be admitted." *Id*.

Here, the evidence against Perez for the instant offense was obtained as a direct consequence of his prior 2014 conviction. Perez was on supervised release but nevertheless left the state without permission causing the FBI to obtain a warrant for the phone number Perez

7

provided allowing them to map his whereabouts. Accordingly, evidence of Perez's 2014 conviction concerns the chronological unfolding of events that led to the indictment and explains the circumstances of how evidence was obtained to the jury. Indeed, had Perez not been convicted in 2014 and been on supervised release, it is unlikely that the FBI would have been able to track his whereabouts leading to his arrest for the instant offense. Because Rule 404(b) does not apply to direct evidence of the crime charged, this evidence is admissible at trial. *United States v. Ferrell* 816 F.3d 433, 443 (7th Cir. 2015). Accordingly, evidence of the 2014 conviction constitutes direct evidence, falls outside the scope of "other acts" for Rule 404(b), and is **approved**.

However, the 2009 conviction does not constitute direct evidence. It does not concern the chronological unfolding of events which led to the indictment for the instant offense and is therefore not admissible as direct evidence.

### Rule 404(b) Evidence

As discussed above, Rule 404(b)(1) prohibits evidence of other crimes to prove conformance in the instant case. Fed. R. Evid. 404(b)(1). However, such evidence is admissible pursuant to Rule 404(b)(2) if it is used for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. Fed. R. Evid. 404(b)(2). To determine whether evidence is admissible for another purpose, courts ask whether "(1) the evidence was offered for some purpose other than to show the defendant's criminal propensities; (2) the other act is similar enough and close enough in time to the charged crime to be relevant to that stated purpose; (3) the evidence presented was sufficient to support a finding that the defendant committed the prior act; and (4) the probative value of the proffered evidence is not substantially outweighed by the danger of unfair prejudice." *United States v. Foster*, 652 F.3d

776, 784-85 (7th Cir. 2011). The Seventh Circuit has concluded that courts may exclude the evidence under Rule 403 if the risk of unfair prejudice is too great. *Gomez*, 763 F.3d at 860.

Rule 403 requires a balance. *United States v. Johnson* 89 F.4th 997, 1009 (7th Cir. 2024). A district court must determine whether the danger of unfair prejudice substantially outweighs the challenged evidence's probative value. *Id*. (emphasis omitted). This balancing test is a "sliding scale." *United States v. West*, 53 F.4th 1104, 1108 (7th Cir. 2022). "The amount of prejudice that is acceptable varies according to the amount of probative value the evidence possesses. The more probative the evidence, the more the court will tolerate some risk of prejudice, while less probative evidence will be received only if the risk of prejudice is more remote." *United States v. Boros*, 668 F.3d 901, 909 (7th Cir. 2012) (internal citations and quotations omitted).

Here, even if the evidence concerning Perez's 2014 conviction was not direct evidence, which it is, evidence concerning his 2014 conviction is admissible under Rule 404(b)(2) as offered for another purpose. For the first element, the evidence is being offered to show motive, intent, plan, preparation, knowledge, *modus operandi*, lack of mistake, or identity of the perpetrator. In *Foster*, the Government sought to admit evidence that prior to an armed robbery committed by the defendant ("Foster"), Foster and an accomplice ("Hill") had perpetrated a check-cashing scheme. *Id*. at 783-784. The Seventh Circuit held that such evidence was not offered as propensity evidence because it "showed the origin of Foster's relationship with Hill . . . helped explain his trust of her in carrying out the robbery . . . [and] helped explain why Foster would have approached Hill, of all people, with his plan to rob Acme: the two knew one another well not merely in a social setting but in an ongoing criminal relationship." *Id*. at 785.

This case is similar to *Foster*. The 2014 evidence is being offered to show the evolution of the relationship between Perez and Freire, an alleged co-conspirator in the instant offense. The

9

evidence will also help explain why Perez would have been involved in the alleged conspiracy: he knew his co-conspirators well with a longtime criminal relationship rather than merely in a social setting.

Moreover, the evidence of both convictions is admissible as *modus operandi* evidence. For evidence to be admissible as proof of *modus operandi*, "it must bear a *singular* strong resemblance to the pattern of the offense charged with similarities between the two crimes sufficiently idiosyncratic to permit an inference of pattern for purposes of proof." *United States v. Thomas*, 321 F.3d 627, 635 (7th Cir. 2003) (internal quotation marks and citations omitted) (emphasis in original). However, mere patterns are insufficient as allowing such evidence "would gut the Rule, rendering it useless as a check on character evidence that would otherwise be inadmissible." *Id*.

The 2014 conviction concerns virtually identical criminal activity committed by Perez and Freire as the instant offense. Indeed, Freire and Perez were both involved in the 2014 conviction where they would surveille distribution facilities in the Indiana-Kentucky-Tennessee area, follow tractor trailers until they stopped, steal the tractor trailer, abandon the tractor a short distance away, quickly paint over the logos of the stolen trailer, put stolen license plates on the stolen trailer, and then transport the stolen trailer to Florida to sell the stolen cargo. The superseding indictment for the instant offense charges Perez for Counts 1, 6, and 7 based on the same conduct (*See* [Filing No. 128 at 2-10](#)). Such similarities between the 2014 conviction and the alleged instant offense are sufficiently idiosyncratic to permit an inference of pattern.

But this is not the case for the 2009 conviction. As Perez points out, he was convicted in 2009 with other defendants not similar to those of the 2014 conviction and the instant offense. Perez argues that the interchangeability of the participants in the 2009 and 2014 convictions causes

10

the evidence to be inadmissible (Filing No. 282 at 4). Perez contends that he was charged in 2009 along with Mijail Zerquera who was not part of the 2014 prosecution. *Id*.

The Court agrees that evidence of the 2009 conviction is too remote and under the Rule 403-balancing test, the potential for undue prejudice outweighs the probative value of the evidence. "Questions about 'how long is too long' do not have uniform answers; the answers depend on the theory that makes the evidence admissible." *United States v. Beasley*, 809 F.2d 1273, 1277 (7th Cir. 1987). While the Government offers the 2009 conviction for another purpose under Rule 404, the evidence is too far removed in time to support its admissibility. Perez was charged in the instant offense in 2023. Consequently, the 2009 conviction occurred fourteen years prior. Such length of time causes decreases the probative value of the evidence.

The evidence also has the potential to be unduly prejudicial to Perez and does not provide any insight about his relationship with the most recent alleged co-conspirators. Because of the gap in time between the 2009 conviction and the instant offense, and because the 2009 conviction too closely resembles propensity evidence, the Court agrees that it should be excluded.

Accordingly, the proffered evidence concerning the 2014 conviction is admissible as direct evidence and evidence of *modus operandi* and is **approved**, and evidence of the 2009 conviction is **excluded**.

## IV. CONCLUSION

Even if evidence of the 2014 conviction was not direct evidence, which it is, and even if the 2014 conviction was not evidence of *modus operandi*, which it is, the conviction would still be admissible under Rule 404(b) as evidence of intent, knowledge, and lack of mistake. However, the 2009 conviction is too remote under Rule 404(b) and the potential for undue prejudice outweighs the probative value under Rule 403. For the reasons explained above, the Government's

proffered evidence of the 2014 conviction (Filing No. 271) is **APPROVED** but the proffered evidence of the 2009 conviction is **DENIED**.

The Court will give a limiting instruction during the trial at the time the 404(b) evidence is introduced, upon request of defense counsel. The Seventh Circuit has "caution[ed] against judicial freelancing in this area." *Gomez*, 763 F.3d at 860. In some situations, the defense may prefer "to let the evidence come in without the added emphasis of a limiting instruction," and if so the judge should not preempt this. *Id.*; *see also United States v. Lawson*, 776 F.3d 519, 522 (7th Cir. 2015) ("[T]he choice whether to give a limiting instruction rests with the defense, which may decide that the less said about the evidence the better.").

**SO ORDERED**.

Date: 6/17/2025

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

Distribution:

Edward Matthew Barloh
DOJ-USAO
matt.barloh@usdoj.gov

Matthew Rinka
United States Attorney's Office
matthew.rinka@usdoj.gov

Jane Ruemmele
HAYES RUEMMELE LLC
jane@chjrlaw.com